IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEDERAL DEPOSIT INSURANCE )
CORPORATION, as Receiver for )
BankUnited, FSB, )
) Civil Action No.: 12 C 3868
Plaintiff, )
)
v. ) Suzanne B. Conlon, Judge
)
STEWART TITLE COMPANY, f/k/a )
STEWART TITLE OF ILLINOIS, INC., )
STEWART TITLE GUARANTY )
COMPANY, and PETER FRICANO, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Federal Deposit Insurance Corporation ("FDIC"), as receiver for BankUnited, FSB, sues Stewart Title Company, f/k/a Stewart Title of Illinois, Inc. ("Stewart Title"), Stewart Title Guaranty Company ("Stewart Guaranty"), and Peter Fricano, alleging breach of contract against Stewart Title (Count I) and Stewart Guaranty (Count II), negligence against Stewart Title and Fricano (Count III), negligent misrepresentation against Stewart Title and Fricano (Count IV), and liability of principal for actions of agent/employee against Stewart Title (Count V). All defendants separately move to dismiss all claims against them. Additionally, Fricano moves to strike FDIC's request for attorney's fees relating to Counts III and IV. For the reasons discussed below, all defendants' motions are denied.

## BACKGROUND

The following facts are taken from the amended complaint. BankUnited, FSB was a federal savings bank with a principal place of business in Coral Gables, Florida. Compl. ¶ 1.

The Office of Thrift Supervision closed BankUnited on May 21, 2009, and FDIC was appointed as receiver pursuant to 12 U.S.C. § 1464(d)(2)(A) and 12 U.S.C. § 1821(c)(5). *Id.* ¶ 2. FDIC now stands in the shoes of BankUnited to perform all the bank's functions, including prosecuting this case. *Id.* ¶ 3. Defendants Stewart Title and Stewart Guaranty are Texas corporations with their principal places of business in Houston. *Id.* ¶¶ 4-6. Both are licensed to do business in Illinois. *Id.* Defendant Peter Fricano is a citizen of Illinois, an attorney, an employee or agent of Stewart Title, and an agent of Stewart Guaranty. *Id.* ¶¶ 7-8. The court has jurisdiction over this case based on FDIC's role as receiver of a federal savings bank. 12 U.S.C. § 1819(b)(2)(A).

This case involves ten loan packages that allegedly were part of an extensive mortgage fraud scheme perpetrated by Advantage Financial Group, Inc. ("AFG"). *Id.* ¶ 42. The basic contours of this scheme were as follows. Advantage Financial Partners, LLC ("AFP") – a company associated with AFG – would purchase homes from homeowners facing foreclosure. *Id.* ¶¶ 42, 43, 47. AFP then entered leaseback agreements with the former owners, allowing the residents to rent the homes from AFP. *Id.* ¶ 47. Some of AFP's agreements with the former owners included "option riders," providing the former owner an election to pay AFP a non-refundable fee for the right to repurchase the property in the future. *Id.* ¶ 49.

Next, AFG recruited people with strong credit to join the "Advantage Real Estate Program." *Id.* ¶ 43. AFG told these investors that it would arrange for them to purchase investment homes from AFP. *Id.* ¶¶ 43-46. AFG promised the investors it would pay the closing costs, down payment, mortgage payments, taxes, and insurance related to the properties. *Id.* ¶ 50. AFG also promised it would manage the properties and collect rents on behalf of the investors. *Id.* ¶ 50. According to AFG's sales pitch, essentially all the investors had to do was have strong

credit, sign the closing documents, and start collecting substantial rental income on the properties. *Id.* ¶ 44.

The properties at issue here share characteristics with the properties in the AFG scheme.[1] *Id.* ¶ 52. AFP purchased each property from a distressed owner using a $10 million line of credit provided by West Suburban Bank, which received mortgages for each property. *Id.* ¶¶ 52, 59. The line of credit obviated the need for individual financing for each purchase, thereby enabling AFP to artificially inflate sales prices. *Id.* This artificial inflation allowed AFP to later inflate sales prices for the investor purchasers without attracting the attention of potential lenders, such as BankUnited. *Id.* Stewart Title acted as the title, closing, and settlement agent for most of the prior AFP purchases. *Id.* ¶ 54. Fricano knew about these prior transactions and prepared the warranty deeds to AFP for all but two transactions. *Id.* ¶¶ 54, 75, 80, 89, 94, 106, 110, 114. AFP then entered leaseback agreements and/or "option rider" agreements with the former homeowners. *Id.* ¶¶ 55, 56. Within months, AFP found "investors" with strong credit interested in purchasing the properties. *Id.* ¶¶ 46, 52, 76, 83, 91, 99, 108, 112, 116. In 2006 and 2007, Essence Financial, a mortgage broker subsidiary or affiliate of AFG, submitted a series of ten loan packages to BankUnited, seeking financing for the purchase of these properties on behalf of ten investor borrowers. *Id.* ¶¶ 14-16, 52, 53, 74.

BankUnited ultimately approved the loan packages and funded the mortgage loans for each transaction. *Id.* ¶¶ 15-16. Stewart Title and/or Fricano provided the title, settlement, and closing services. *Id.* ¶ 17. On account of their previous work with AFP, Fricano and Stewart

---

[1] The amended complaint provides the specific facts regarding the relevant transactions for each of the ten different Illinois properties. Compl. ¶¶ 75-120. Each transaction follows the general pattern described above. Specific distinctions among these properties are neither addressed in the parties' briefing nor relevant to defendants' motions to dismiss.

3

Title knew about the prior property sales, option riders, and leaseback agreements. *Id.* ¶¶ 54, 56. Fricano also knew that AFP's previous purchases were not arm's length transactions, and were designed to allow AFP to inflate the prices before selling the properties to investors. *Id.* ¶ 65. Further, Stewart Title and Fricano had reason to suspect that, consistent with the terms of the Advantage Real Estate Program, the borrowers' down payments in the subject transactions were not made from the borrowers' own funds, but using AFG's funds, and that the borrowers did not intend to make any loan payments to BankUnited. *Id.* ¶ 70.

Despite their awareness of the properties' recent histories, Stewart Title and/or Fricano warranted that the properties complied with BankUnited's closing instructions. *Id.* ¶¶ 18-19. In relevant part, the closing instructions required Stewart Title and/or Fricano to ensure that BankUnited received a first lien priority on each property and that the down payments were paid directly by the purchasers. *Id.* ¶¶ 20, 21, 29. Additionally, the closing instructions required Stewart Title and/or Fricano to inform BankUnited about any double closings or ownership changes in the subject properties within the six months prior to closing. *Id.* ¶ 25. The instructions provided that if Stewart or Fricano failed to fully comply with the closing instructions, they would have no authority to close the subject transactions or disburse BankUnited's funds. *Id.* ¶ 19. Finally, the instructions required the preparation of a Department of Housing settlement statement ("HUD-1") for each transaction. *Id.* ¶ 21. The HUD-1s detailed the receipts and disbursements in the settlement of each transaction and, by signing the HUD-1s, Stewart Title and Fricano certified as to the accuracy of the closing details. *Id.* ¶¶ 22-24.

Stewart Guaranty, a title insurer, provided BankUnited with title insurance for these closings to protect the bank's mortgages on the properties. *Id.* ¶ 36. In doing so, Stewart Guaranty provided closing protection letters ("CPLs") for each closing, which extended the title

4

insurance policy to cover "bad acts" of the title insurer's authorized agents (i.e., Stewart Title and Fricano). *Id.* ¶¶ 32, 33. Pursuant to the CPLs, Stewart Guaranty agreed to reimburse BankUnited for actual losses incurred in connection with the closings Stewart Title and Fricano conducted when such losses arose out of either a failure to comply with the closing instructions or fraud, dishonesty, or negligence in handling BankUnited funds or documents in connection with the closings. *Id.* ¶ 34.

Soon after receiving the BankUnited loans, all of the borrowers in the subject transactions defaulted, and all the collateral properties have now been liquidated or are currently in foreclosure proceedings. Compl. ¶¶ 38, 39. The liquidation of the collateral properties has resulted in recovery of only a fraction of the amounts due and owing on the loans. *Id.* ¶ 3.

## LEGAL STANDARD

A complaint must contain a short and plain statement of the claim that shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A complaint may be dismissed when its allegations "fail[ ] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A claim is plausible on its face when it includes factual content sufficient to allow the court draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

## DISCUSSION

I.  **The Breach of Contract Claims Against Stewart Title and Stewart Guaranty (Counts I and II)**

Although Stewart Title and Stewart Guaranty submitted separate motions to dismiss, their arguments for dismissing FDIC's breach of contract claims are virtually identical. To survive a Rule 12(b)(6) motion on an Illinois breach of contract claim, FDIC must allege the following: (1) the existence of a contract purportedly breached by Stewart Title or Stewart Guaranty, (2) FDIC's performance of all its contractual conditions, (3) the facts of defendant's alleged breach, and (4) the existence of damages as a consequence of the breach. *Elson v. State Farm Fire and Casualty Co.*, 691 N.E.2d 807, 881 (Ill. App. Ct. 1998).

Count I alleges Stewart Title, in serving as BankUnited's closing agent, entered a contractual relationship with BankUnited defined by the closing instructions. FDIC alleges Stewart Title breached this contract by failing to disclose previous double closings or changes in ownership, failing to properly release prior mortgages, and by allowing third parties to supply the funds for the borrowers' down payments. Compl. ¶¶ 61, 68-69, 122-125. Count II alleges Stewart Guaranty is liable on the CPLs issued to BankUnited in each of the subject transactions. The CPLs indemnified BankUnited for actual losses arising out of the failure of its agents to comply with the closing instructions or any other fraud, dishonesty, or negligence in handling BankUnited's funds or closing documents. *Id.* ¶¶ 129, 130. FDIC alleges Stewart Title and/or Fricano, acting as Stewart Guaranty's agents, triggered this obligation by failing to comply with the closing instructions as detailed above; by not revealing that the property purchases were not arm's length transactions, that AFP and the borrowers had separate agreements regarding loan payments and property maintenance, and that the previous homeowners had leaseback

agreements; and by otherwise inaccurately conveying the status of the title transferred to the borrowers. *Id.* ¶¶ 131, 132.

In moving to dismiss Counts I and II, Stewart Title and Stewart Guaranty advance two arguments. First, defendants argue generally that FDIC's allegations are "conclusory and insufficient." This argument focuses on FDIC's numerous allegations made "on information and belief." The primary case cited in support of their argument, *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677 (7th Cir. 1992), is inapposite. There, fraud allegations were held insufficient because they were made on information and belief. 959 F.2d at 683. *Bankers Trust Co.* involved Fed. R. Civ. P. 9(b)'s heightened pleading standard. *Id.* Despite the alleged mortgage fraud scheme that underlies FDIC's claims, FDIC is not alleging fraud and is not required to plead with the higher level of particularity. Furthermore, the *Bankers Trust Co.* plaintiff repeatedly alleged publically available facts "on information and belief." *Id.* at 684. Here, the facts pleaded on "information and belief" were not publically available.[2] Finally, FDIC's claims are not like the claims dismissed by this court in *MacLean-Fogg Co. v. Edge Composites, LLC*, No. 08 C 6367, 2009 U.S. Dist. LEXIS 31267 (N.D. Ill. Apr. 14, 2009) (Conlon, J.), where the plaintiff's allegations were *exclusively* based on information and belief. At *15-*16. The vast majority of FDIC's allegations are *not* on information and belief and are

---

[2] For example, FDIC pleads its allegations regarding the existence of "option rider" agreements between AFP and the previous owners of the subject properties "on information and belief." Compl. ¶¶ 56, 57. FDIC made these allegations based on its awareness of the existence of "option rider" agreements between AFP and previous owners of properties *not* involved in this litigation. *Id.* Pleading on information and belief is an acceptable practice when certain facts are not readily accessible but there is sufficient information to justify interposing the allegation. *See, e.g., In re Ameriquest Mortg. Co.*, No. 05-7097, 2010 U.S. Dist. LEXIS 4572, at *50 (quoting Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (3d ed. 2004)) (Aspen, J.).

7

factually detailed. Although FDIC does not include the closing instructions or the CPLs with its complaint,³ it thoroughly outlines the relevant obligations imposed by those documents and the alleged basis for defendants' liability.

Defendants also attack FDIC's claim for damages. In Count I, FDIC alleges that BankUnited funded the subject loans in reliance on Stewart Title and Fricano's agreement to comply with the closing instructions, otherwise it would not have agreed to grant the loans. Compl. ¶¶ 126, 127. Count II repeats Count I's allegations regarding damages and additionally alleges that BankUnited's decision to fund the loans relied on other alleged false impressions and non-disclosures made by Stewart Title and/or Fricano; Count II seeks indemnification for actual losses arising from Stewart Title's and/or Fricano's conduct in closing the subject transactions. *Id.* ¶¶ 133-135, 137. Defendants argue the damage allegations are "conclusory and insufficient" and that FDIC is attempting to make remote parties to the transaction (i.e., Stewart Title and Stewart Guaranty) the guarantors of BankUnited's decision to extend credit to individual homeowners. Specifically, defendants argue the losses allegedly incurred when the properties were foreclosed were caused by BankUnited's overvaluation of the properties or, alternatively, the widespread real estate market downturn resulting from the Great Recession.

Defendants attempt to support their argument with Seventh Circuit decisions holding that a breaching defendant could not be liable for losses caused by extraneous forces. *E.g., Movitz v. First Nat'l Bank of Chicago*, 148 F.3d 760, 763 (7th Cir. 1998) (insufficient evidence to support jury finding that bank's breach was legal cause for damages stemming from real estate market

---

³ Unlike Illinois state courts, federal courts do not require critical documents to be attached to the complaint. *See, e.g., Arnold v. Janssen Pharmaceutical, Inc.*, 215 F. Supp. 2d 951, 962 (N.D. Ill. 2002) (Gottschall, J.).

downturn); *Maxwell v. KPMG LLP*, 520 F.3d 713, 719 (7th Cir. 2008) (affirming summary judgment against plaintiff who failed to show causal connection between accounting firm's alleged breach and damages from the merger and acquisition of a company that would later fail during the dot-com market collapse); *United States v. Marlatt*, 24 F.3d 1005, 1007 (7th Cir. 1994) (reversing sentencing judge's calculation of loss for purposes of determining fraud sentence). Each of defendants' cases are factually distinct and, notably, none involves a dismissal on the pleadings.

Further, defendants' argument that neither the alleged breach of the closing instructions nor the other false information provided by Stewart Title and/or Fricano was the proximate cause of BankUnited's damages is premature. The extent to which BankUnited relied on such information, or the extent to which extraneous factors were responsible for the foreclosures, are questions of fact. A motion to dismiss tests the sufficiency of the complaint, not its merits. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996). FDIC's allegations that BankUnited would not have made the subject loans had Stewart Title and/or Fricano complied with the closing instructions and not engaged in activities allegedly warranting indemnification under the CPLs are plausible.

Thus, FDIC has adequately plead the elements necessary for a breach of contract claim under Illinois law.

### III. Tort Claims Against Stewart Title and Fricano (Counts III, IV, and V)

Counts III, IV, and V allege tort claims against defendants. Specifically, Count III alleges negligence against Stewart Title and Fricano, Count IV alleges negligent misrepresentation against Stewart Title and Fricano, and Count V alleges principal liability against Stewart Title

based on the actions of Fricano and other agents involved in the subject transactions. In moving to dismiss Counts III and IV, Fricano argues these claims are barred by Illinois' economic loss doctrine, as established in *Moorman Manufacturing Co. v. National Tank Co.*, 435 N.E.2d 443 (Ill. 1982).[4] Stewart Title adopts Fricano's argument as to Counts III and IV and further argues that, if the tort claims against Fricano are dismissed, FDIC's claim of principal liability against it (Count V) should also be dismissed.

Because claims for purely economic loss are governed by contract, the remedy lies in contract rather than tort. *Moorman*, 435 N.E.2d at 451-52. FDIC does not deny that it seeks economic damages for its tort claims. FDIC contends it may sue defendants for economic loss because they supplied information to FDIC; an exception to the economic loss doctrine allows a plaintiff to sue defendants for pure economic loss when defendants are in the business of supplying information for the guidance of others. *Id.* at 452. Fricano replies this exception does not apply in light of the Illinois Supreme Court's holding that title companies and insurers are not in the business of supplying information for purposes of the exception to the economic loss doctrine. *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 332 (Ill. 2006). FDIC acknowledges the clear holding in *First Midwest Bank* but contends its claims rest upon the roles that Fricano and Stewart Title performed not as title insurers but as *closing agents* with regard to the subject properties.

Although Stewart Title performed in the role of a title insurer, it may also have acted as a closing agent. *See TRW Title Ins. Co. v. Security Union Title Ins. Co.*, 887 F. Supp. 1032, 1033

---

[4] In his reply, Fricano advances for the first time the argument that FDIC's claim for negligence (Count III) is duplicative of its claim for negligent misrepresentation (Count IV) and should be dismissed. Arguments made for the first time in a reply brief are waived. *United States v. Adamson*, 441 F.3d 513, 521 n.2 (7th Cir. 2006).

10

n.3 (N.D. Ill. 1995) (Bucklo, J.) (discussing how title agents often also act as closing agents in the same transaction). The complaint specifically alleges that "Stewart Title provided title, settlement, and closing services for the Subject Transactions." Compl. ¶ 17. The factual allegations for each of the ten specific properties note that Stewart Title performed as closing agent for each transaction. *Id.* ¶¶ 76, 83, 91, 95, 99, 103, 108, 112, 116, 119. Furthermore, Stewart Title does not deny that it served as the closing agent for the transactions.

Fricano contends that the complaint fails to specifically allege he acted as a closing agent. He states that, although the complaint explicitly notes Stewart Title's involvement with closings for each transaction, the only detail provided regarding Fricano's role at closing is that he signed HUD-1s on behalf of AFP. Compl. ¶¶ 76, 83, 91, 95, 99, 103, 108, 112, 116, 119. Fricano argues FDIC has solely pleaded that he served as the sellers' attorney and the title agent, not as the closing agent. Other sections of the complaint, however, suggest a reasonable inference that Fricano performed as a closing agent. FDIC's claim for negligence alleges that "Fricano performed title, *closing*, and escrow services for BankUnited in connection with the mortgage loan transactions enumerated herein." *Id.* ¶ 140 (emphasis added). The complaint also notes that "Stewart Title's employees and/or agents, including Fricano, witnessed and notarized closing documents, and presided over the subject closings." *Id.* ¶ 17. At the pleading stage, these statements suffice to allege Fricano's participation as a closing agent.

Neither Fricano nor Stewart Title offers case law indicating that the *First Midwest Bank* title insurer exception to the economic loss doctrine's exception for information suppliers also extends to closing agents. Indeed, such an extension would be inconsistent with the logic in *First Midwest Bank*, which clarifies that the negligent misrepresentation exception to the economic

loss doctrine for information suppliers is only inapplicable when the supplied information is ancillary to a specific product. 843 N.E.2d at 335. A title insurer's primary function is to provide a specific product, title insurance. *Id.* at 340-341. In contrast, the closing agent, as pleaded by FDIC, provides information to the lender and other parties participating in the closing and does not provide a specific product. Compl. ¶¶ 21-24.

Stewart Title's and Fricano's motions to dismiss Counts III and IV are denied. Consequently, Stewart Title's motion to dismiss Count V, which is entirely contingent on dismissal of Counts III and IV against Fricano, is denied.

### IV. Fricano's Motion to Strike FDIC's Request for Attorney's Fees for Counts III and IV

Finally, Fricano requests that the court strike FDIC's request for attorney's fees related to Counts III and IV in its prayer for relief. Fricano argues that, in Illinois, a losing party is not responsible for attorney's fees in the absence of a statute or contractual agreement allowing for the recovery of such fees. *Taylor v. Pekin Ins. Co.*, 899 N.E.2d 251, 256 (Ill. 2008). He notes that FDIC's claims for negligence (Count III) and negligent misrepresentation (Count IV) do not provide for such relief. FDIC counters that Fricano's motion to strike is premature because attorney's fees and costs incurred as a result of a defendant's conduct may be awarded as a form of damages. *Duignan v. Lincoln Towers Ins. Agency, Inc.*, 667 N.E.2d 608, 613 (Ill. App. Ct. 1996).

The attorney fees and costs addressed in *Duignan* were not the fees and costs associated with that particular case, but those expended in efforts to cure damages caused by the defendant's actions. *Id.* at 613. It is not clear from the face of the complaint whether FDIC's requested fees and costs include only those fees and costs incurred in this litigation, or encompass legal fees and

12

costs spent attempting to cure damages caused by Fricano's alleged negligence and negligent misrepresentations. Fricano's motion to strike is premature.

## CONCLUSION

Defendants' motions to dismiss [27, 31, 34] are denied. Defendant Fricano's motion to strike plaintiff's request for attorney's fees with regard to Counts III and IV is denied without prejudice.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

October 25, 2012